UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TAURSHIA SIMMONS and NAVID KALATIZADEH<br><br>Individually and on Behalf of All Others Similarly Situated,<br><br>                 Plaintiffs,<br><br>     v.<br><br>AMBIT ENERGY HOLDINGS, LLC, AMBIT TEXAS, LLC, AMBIT MARKETING, LLC, AMBIT NEW YORK, LLC, JERE W. THOMPSON, and CHRIS CHAMBLESS,<br><br>                 Defendants. | **ECF Case**<br><br>Civil Action No. 13-CV-06240 (JMF) (FM)<br><br><br><br>Jury Trial Demanded |

---

## DEFENDANTS' REPLY MEMORANDUM TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

---

# TABLE OF CONTENTS

I.    Introduction ............................................................................................................1

II.   Arguments and Authorities ....................................................................................2

      A.    Plaintiffs cannot evade CAFA's local controversy exception by making
            allegations in their brief not made in their Complaint; nor can they evade
            the exception by distorting the statutory language. ................................... 2

            1.    Plaintiffs misread the statutory language "from whom relief is
                  *sought*" to mean "from whom relief is *obtained*." ..................................... 2

            2.    Plaintiffs add to the statutory language by interpreting the term
                  "significant" to mean the "most significant." ............................................. 3

            3.    Plaintiffs' shifting theories of liability with regard to the Texas
                  Defendants do not remove any potential liability of Ambit New
                  York. ................................................................................................ 6

            4.    Plaintiffs may not read the "principal injuries" prong in the
                  conjunctive because it was written in the disjunctive. ............................. 7

            5.    Because *New York* Plaintiffs are suing a *New York* Defendant for
                  alleged violations of *New York* consumer-protection laws, the local
                  controversy exception applies. ................................................................. 9

      B.    The Complaint fails to allege that personal jurisdiction exists over the
            Individual Defendants. ................................................................................ 10

            1.    Plaintiffs mistakenly contend that Defendants rely on the fiduciary
                  shield doctrine. ....................................................................................... 10

            2.    The Complaint alleges no facts demonstrating that the Individual
                  Defendants' own contacts should subject them to personal
                  jurisdiction. ........................................................................................... 11

            3.    The Complaint does not allege that the Individual Defendants
                  acted as the agents of the LLCs in the transactions at issue. ................... 12

      C.    Plaintiffs fail to state claims upon which relief may be granted. .......................... 13

            1.    Plaintiffs ignore the dispositive fact that the contracts at issue were
                  month-to-month. ..................................................................................... 13

            2.    Plaintiffs have not stated claims for relief under N.Y.G.B.L. § 349-
                  d(7) or for unjust enrichment. ................................................................. 14

      D.    CAFA policy disfavors jurisdictional discovery ................................................ 14

III.    Conclusion ..........................................................................................................................15

# TABLE OF AUTHORITIES

## CASES

*Coffey v. Freeport McMoran Copper & Gold,*
  581 F.3d 1240 (10th Cir. 2009) ..................................................................... 2, 3

*Coleman v. Estes Express Lines, Inc.,*
  631 F.3d 1010 (9th Cir. 2011) ................................................................... 4, 5, 6, 7

*College of Dental Surgeons of P.R. v. Triple S Mgmt., Inc.,*
  No. 09–1209(JAF), 2011 WL 414991 (D. Puerto Rico Feb. 8, 2011) ...................... 8

*Evans v. Walter Industries, Inc,*
  449 F.3d 1159 (11th Cir. 2006)) ................................................................... 5, 6

*Heckworth v. Progressive Cas. Ins.,*
  468 F.3d 722 (10th Cir. 2004) ...................................................................... 15

*Hypoxico, Inc. v. Colo. Altitude Training LLC,*
  No. 02-Civ.-6191, 2003 WL 21649437 (S.D.N.Y. July 14, 2003).................... 10, 12

*Johnson v. MFA Petroleum Co.,*
  See No. 11-0981-CV-W-DGK, 2013 WL 3448075 (W.D. Mo. July 9, 2013).......... 8

*Karabu Corp. v. Gitner,*
  16 F. Supp. 2d 319 (S.D.N.Y. 1998) ............................................................. 13

*Kaufman v. Allstate N.J. Ins. Co.,*
  561 F.3d 144 (3d Cir. 2009) .................................................................... 3, 7, 8

*Kearns v. Ford Motor Co.,*
  No. CV 05–5644GAF (JTLX), 2005 WL 3967998 (C.D. Cal. Nov. 18, 2005)).......... 8

*Kinetic Instruments, Inc. v. Lares,*
  See 802 F. Supp. 976 (S.D.N.Y. 1992)......................................................... 11

*Kreutter v. McFadden Oil Corp.,*
  71 N.Y.2d 460 (1988) .............................................................................. 10

*Mattera v. Clear Channel Communications,*
  239 F.R.D. 70 (S.D.N.Y. 2006) ................................................................... 9

*O'Brien v. Nat'l Prop. Analysts Partners,*
  719 F. Supp. 222 (S.D.N.Y. 1989) ........................................................ 2, 4, 7, 12

*Ontel Prods., Inc. v. Project Strategies Corp.,*
  899 F. Supp. 1144 (S.D.N.Y. 1995) ............................................................. 12

*Rainbow Apparel Distributor Center Corp. v. Gaze U.S.A., Inc.,*
    295 F.R.D. 18 (E.D.N.Y. 2013) ........................................................................... 13

*Tradition Chile Agentes de Valores Ltda. v. ICAP Sec. USA, LLC,*
    No. 09-Civ.-10343, 2010 WL 4739938 (S.D.N.Y. Nov. 5, 2010) ......................... 11

*United States v. Dauray,*
    215 F.3d 257 (2d Cir. 2000) ............................................................................... 10

*Villalpando v. Exel Direct Inc.,*
    No. C–12–04137, 2012 WL 5464620 (N.D. Cal. Nov. 8, 2012).............................. 8

*Virgin Enters. Ltd. v. Virgin Eyes LAC,*
    No. 08-CV-8564, 2009 WL 3241529 (S.D.N.Y. Sept. 30, 2009) .......................... 11

*Waller v. Hewlett–Packard Co.,*
    No. 11CV0454–LAB, 2011 WL 8601207 (S.D. Cal. May 10, 2011) ...................... 8

*Wise v. Energy Plus Holdings,*
    No. 11-Civ.-7345 (S.D.N.Y. Mar. 29, 2012) ....................................................... 14

## STATUTORY AUTHORITIES

28 U.S.C. § 1332(d)(4)(A) ..................................................................... 2, 3, 6, 7, 9, 10

## RULES AND REGULATIONS

Fed. R. Civ. P. 56(d) ............................................................................................... 15

S. Rep. No. 109-14 .......................................................................................... 5, 8, 15

# I.   INTRODUCTION

With their first Complaint, Plaintiffs brought a straightforward New York state controversy to this Federal Court.  *See* Dkt. No. 1.  They alleged that Defendant Ambit *New York*, through contracts with *New York* plaintiffs, "[took] advantage of *New York*'s deregulation," in ways that "[ran] afoul of *New York* State law," which resulted in harm to "*New York* Ambit customers."  *Id.* ¶¶ 2, 7, 8, 12, 26.  Defendants' initial motions to dismiss alerted Plaintiffs to the fact that CAFA's local controversy exception bars this Court from hearing their New York case.  Plaintiffs then attempted to plead their way around this insurmountable jurisdictional barrier.  In hopes of shifting the focus off of Ambit New York, they amended their Complaint to add "mere department" allegations, suggestive of a "puppet" theory as to how the "real" Defendants are out of state ("first evasive theory").  *See* Dkt. Nos. 27, 38.  In response, Defendants' subsequent motions to dismiss demonstrated that Plaintiffs' "mere department" allegations were relevant only to personal jurisdiction, and that Plaintiffs' allegations failed to support a veil-piercing claim.  *See* Dkt. No. 56.  Plaintiffs now impermissibly attempt to use their brief in opposition to allege yet another evasive theory: insolvency ("second evasive theory").  *See* Dkt. No. 63.  But no matter how they try to repackage their allegations, Plaintiffs simply cannot transform this local controversy—in which they seek to vindicate the rights of *New York* state citizens under *New York* state laws against a *New York* Defendant—into a federal case.  Because CAFA requires the Court to decline jurisdiction over this local controversy, Defendants respectfully request that the Court dismiss Plaintiffs' New York Complaint with prejudice.

## II.    ARGUMENTS AND AUTHORITIES

**A.    Plaintiffs cannot evade CAFA's local controversy exception by making allegations in their brief not made in their Complaint; nor can they evade the exception by distorting the statutory language.**

### 1.    Plaintiffs misread the statutory language "from whom relief is *sought*" to mean "from whom relief may be *obtained*."

Plaintiffs' brief in opposition ("Pls.' Br.") is rife with new allegations that Ambit New York could not satisfy a judgment against it, their second evasive jurisdictional theory in this lawsuit.[1]   But because these allegations were not pleaded in the Complaint, Plaintiffs may not raise them in their brief.  *See O'Brien v. Nat'l Prop. Analysts Partners*, 719 F. Supp. 222, 229 (S.D.N.Y. 1989).  Indeed, "it is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss."  *Id.*   But even if Plaintiffs had properly raised these allegations in their Complaint, Ambit New York's ability or inability to satisfy a judgment is legally irrelevant to the issue before the Court.  *See Coffey v. Freeport McMoran Copper & Gold*, 581 F.3d 1240, 1245 (10th Cir. 2009).   The CAFA exception requires a showing that significant relief is *sought* from a local defendant, not that it *may be obtained* therefrom.  *See* 28 U.S.C. § 1332(d)(4)(A)(i)(II)(aa).  As the Tenth Circuit has explained,

> The statutory language is unambiguous, and a "defendant from whom significant relief is sought" does not mean a "defendant from whom significant relief may be obtained." There is nothing in the language of the statute that indicates Congress intended district courts to wade into the factual swamp of assessing the financial viability of a defendant as part of this preliminary consideration . . . .

---

[1] *Compare* Compl. (containing no allegations of any Defendant's ability or inability to satisfy a judgment), *with* Pls.' Br. at 2 ("[T]he mere shell that is the New York defendant, cannot return Plaintiffs' money."), *and id.* at 13 ("[T]he Texas Defendants . . . Are the Only Defendants Capable of Providing Plaintiffs with a Full Recovery), *and id.* at 18 n.24 ("Ambit New York . . . does not have Plaintiff's money."), *and id.* at 19 ("Defendants offer no evidence . . . that Ambit New York has Plaintiffs' money."), *and id.* at 21 ("Defendants have offered no proof that Ambit New York is capable of satisfying any judgment against it.").

*Coffey*, 581 F.3d at 1245.  Thus, even if Plaintiffs' second evasive theory were properly before the Court, these allegations would have no bearing on the "significant relief" prong in the CAFA local controversy exception analysis.  Plaintiffs' second evasive theory fails.

> **2.      Plaintiffs add to the statutory language by interpreting the term "significant" to mean the "most significant."**

CAFA's local-controversy exception requires the local defendant to be one "from whom *significant* relief is sought" and one whose conduct forms "a *significant* basis for the claims asserted."  *See* 28 U.S.C. § 1332(d)(4)(A)(i)(II)(aa),(bb) (emphases added).  Plaintiffs conflate the two "significance" prongs, and then misinterpret them in an effort to require the local defendant's conduct to form the *most significant* basis for the claims and the local defendant to be one from whom *most* of the relief is sought.  *See* Pls.' Br. at 19 n.30 ("Who is *more* significant?") (emphasis added).  But the statute requires *significance*, not *predominance*.  "The word significant is defined as 'important, notable.'  The local defendant's alleged conduct must be an *important* ground for the asserted claims . . . ."  *Kaufman v. Allstate N.J. Ins. Co.*, 561 F.3d 144, 157 (3d Cir. 2009) (citation omitted).  Plaintiffs' misunderstanding that "significant" means "most significant" causes them to admit that Ambit New York's conduct comprises at least "2/5 [40%] of the Complaint."  *See* Pls.' Br. at 18 n.27.  Even if Ambit New York's alleged conduct comprised only forty percent of the alleged conduct—and indeed it comprises much more—forty percent plainly "forms a significant basis for the claims asserted."  *See* 28 U.S.C. § 1332(d)(4)(A)(i)(II)(bb).

Ambit New York is *the* counter-party to the contracts that form the basis of the allegations in this lawsuit.  As such,  its alleged conduct and the relief sought from it are necessarily "significant."  Recognizing this fact, Plaintiffs add a new, unpleaded legal theory,

that the contracts under which they sue are void under N.Y.G.B.L. § 349-d(8).[2]   These

allegations are not properly before the Court because they are not in the Complaint, *see O'Brien*,

719 F. Supp. at 229, and because they require a merits determination.   But even if the Court

could properly consider these new allegations, they demonstrate that Plaintiffs seek significant

relief from Ambit New York because they are suing under New York law to invalidate a

contract, with a New York counter-party, that serves as the basis of the entire claim.   And as

Defendants explained in their motions to dismiss, this type of injunctive relief is "significant."

*See Coleman v. Estes Exp. Lines, Inc*, 631 F.3d 1010, 1020 (9th Cir. 2011).

Plaintiffs also cite inapposite authority in an attempt to avoid the exception.   *First*,

Plaintiffs rely on the Senate Report's least-analogous hypothetical.   *See* Pls.' Br. at 14.   The

products-liability hypothetical must be confined to its facts.   It explains that "[i]n *product

liability cases*, the *conduct of a retailer* such an automobile dealer does not form a significant

basis for the claims of the class members." S. Rep. No. 109-14, at 41 (emphases added).   The

Ninth Circuit has interpreted this very hypothetical, explaining:

> [B]ecause liability is premised on an allegedly defective transmission common to
> all cars of a particular model, the conduct of the local dealers will not form a
> significant basis for the plaintiffs' claims. Second, the manufacturer will be liable
> to every member of the class, whereas individual dealers will only be liable to, at
> most, the particular class members with whom they interacted. Thus, it is obvious
> in this case that the great bulk of any damage award is sought from the
> manufacturer of the cars rather than from the local dealers.

*Coleman*, 631 F.3d at 1018.

Here, by contrast, because liability is premised on Ambit New York's contracts with

Plaintiffs that conform to New York law and the New York Energy Service Company

---

[2] *Compare* Compl. (containing no reference to N.Y.G.B.L. § 349-d(8)), *with* Pls.' Br. at 2 ("[R]elying on the terms of a contract declared void . . . ."), *and id.* at 17 n.23 ("The TOS is not a valid contract."), *and id.* at 18 (same), *and id.* at 24 n.41 ("[T]he TOS . . . is *void*."), *and id.* at 35 ("Defendants' Section 349-d violations invalidate these contracts.").

Consumers Bill of Rights, its conduct forms a significant basis for the Plaintiffs' claims.  Further, Ambit New York interacted with every member of the class as it is the counter-party to their contracts. [3]  Thus, "it is obvious in this case that the great bulk of any damage award is sought from [Ambit New York]."  *See Coleman*, 631 F.3d at 1018.  Indeed, this case is almost identical to the hypothetical Defendants referenced in their initial motion.  *See* Defs.' Br. at 7.  *New York* residents have sued a *New York* entity and an out-of-state parent company alleging wrongdoing by the *New York* entity in *New York*.  *See* S. Rep. No. 109-14, at 41.  Because "the controversy is at its core a local one," it is "precisely the type of case for which the Local Controversy Exception was developed."  *Id.*

*Second*, Plaintiffs' reliance on *Evans v. Walter Industries, Inc.*, is similarly misplaced.  *See* Pls.' Br at 16 (citing 449 F.3d 1159, 1167, n.7 (11th Cir. 2006)).  In *Evans*, plaintiffs named eighteen unrelated manufacturing facilities as defendants in a lawsuit alleging that property damage and personal injuries resulted from defendants' release of various waste substances over an eighty-five-year period.  *Id.* at 1165.  There, the court had neither "insight into whether [the local defendant] played a significant role in the alleged contamination, as opposed to a lesser role, or even a minimal role," nor "enlightenment at all with respect to the significance of the relief sought relative to the relief sought from the other 17 named co-defendants."  *See id.* at 1167.  As a result, the court was unable to conclude that the significance prongs were satisfied. *See id.*  Importantly, because evidence showed that the local defendant's operations ceased early in the defined time period and were located slightly outside the affected geographic area, there was a causation issue and a strong suggestion that the local defendant's conduct did not form a

---

[3] Plaintiffs admit that at some point in 2010, Ambit New York, LLC, was substituted as the counter-party to the Terms of Service.  Compl. ¶ 28, Dkt. No. 38.  Thus, for any customer who contracted with Ambit prior to 2010, but remained a customer, Ambit New York has been, and remains, the party that contracts with the customer.

significant basis for the plaintiffs' claims. *Id.* at 1167–68. [4]  Here, by contrast, Ambit New York is the contracting party in this case and the only named Defendant that is an ESCO.  *But for Ambit New York, this lawsuit would not exist.*  Indeed, Ambit New York's "alleged conduct forms a significant basis for the claims asserted," and it is a defendant "from whom significant relief is sought."  *See* 28 U.S.C. §1332(d)(4)(A)(i)(II)(aa),(bb).

### 3.   Plaintiffs' shifting theories of liability with regard to the Texas Defendants do not remove any potential liability of Ambit New York.

Recognizing that their "mere department" allegations would not suffice to impose liability on the Texas Defendants through a veil-piercing theory, Plaintiffs abandoned that evasive theory in their brief.  *See* Pls.' Br. at 22–23.  Now, admitting that "*Ambit New York's statutory violations*" are at issue—again conceding that Ambit New York is a defendant "from whom significant relief is sought"—they argue that the Texas Defendants may be held liable for Ambit New York's conduct under general agency principles, yet another evasive theory.  *See* Pls.' Br. at 23 (emphasis added).  In the alternative, they argue that the Texas Defendants are directly liable for the alleged conduct.  *See id.*

Even if these arguments had merit, Plaintiffs continue to miss the point: any potential liability of the other Defendants does not diminish Ambit New York's independent liability and the satisfaction of the statutory "significance" prongs as a result.  The Ninth Circuit has addressed this argument in the context of related entities, explaining:

> With respect to "conduct" under subsection (bb), [Defendant] contends that because [the parent company] controls all important actions of [the subsidiary], the conduct of [the subsidiary] does not "form a significant basis for the claims" asserted by [the plaintiff]. This contention ignores the fact that the conduct of [the subsidiary], even if controlled by [the parent], nonetheless remains the conduct of [the subsidiary], for which [the subsidiary] may be held liable.

---

[4] Notably, *Evans* has been criticized for looking outside the complaint to assess the "significant conduct" prong, a decision that was likely outcome-determinative. *See Coleman*, 631 F.3d at 1019.

*See Coleman*, 631 F.3d at 1020.  No evasive theory that Plaintiffs can concoct changes the fact that Ambit New York is the counter-party to Plaintiffs' contracts upon which their complaints are based.  *Without Ambit New York, this lawsuit would not exist.*

> **4.    Plaintiffs may not read the "principal injuries" prong in the conjunctive because it was written in the disjunctive.**

Plaintiffs' Complaint alleges that a class of *New York* residential energy customers was harmed by conduct that resulted in alleged violations of *only New York* consumer-protection laws.  As Defendants explained in their motions to dismiss, the Complaint's fleeting references to Illinois are red herrings.  Defs.' Br. at 15.  Nevertheless, Plaintiffs' brief now adds cursory references to Delaware, Maryland, New Jersey, and Pennsylvania.  *See* Pls.' Br. at 11.  Plaintiffs apparently intend these new allegations to inject a "national flavor" into this local lawsuit.  *See* Pls.' Br. at 2 ("This action clearly has national implications because Defendants have implemented the same deceptive policies from their Dallas headquarters throughout the nation." (emphases removed)).

Besides the fact that Plaintiffs are prohibited from using their brief to amend their Complaint, *see O'Brien,* 719 F. Supp. at 229, these allegations, too, are red herrings.  The "principal injuries" prong requires that "principal injuries resulting from the alleged conduct *or* any related conduct of each defendant were incurred" in New York.  *See* 28 U.S.C. § 1332(d)(4)(A)(i)(III) (emphasis added).  Plaintiffs ask the Court to read an "and" in place of the statutory "or," so as to give their allegations of Ambit's conduct in other states meaning.  But this very reading has been rejected because it "is at odds with the plain language of the provision." *See Kaufman*, 561 F.3d at 158.  In a dispute regarding insurance policies, the Third Circuit rejected the argument that the defendant issued "insurance policies providing identical coverage in other states," explaining:

In the instant case, the alleged conduct comprises the failure to insure or pay for diminished value claims in New Jersey. Plaintiffs are all citizens of New Jersey, the insurance policies were issued in New Jersey, and the putative class would be comprised of members with insurance policies issued in New Jersey. To the extent there are any injuries resulting from the alleged conduct, those injuries were incurred in New Jersey. Hence, the principal injuries provision is satisfied.

*Id.*

Here, Plaintiffs argue that Ambit employs identical practices in other states.  But in the instant case, the alleged conduct comprises failure to provide a full 1% savings, withholding of refund checks, and automatically defaulting customers to another energy plan in *New York*.  *See id.*  Further, the putative class consists of *New Yorkers* who had energy contracts for their residences in *New York*.  *See id.*  "To the extent there are any injuries resulting from the alleged conduct, those injuries were incurred in New [York].  Hence, the principal injuries prong is satisfied."  *See id.*[5]

Further, while Plaintiffs' new allegations suggest that Ambit may employ similar business practices in other states, even if those allegations were properly before the Court, *no allegation whatsoever exists*—in either Plaintiffs' brief or their Complaint—of how this alleged conduct would violate the laws of any other state.  Indeed, CAFA was enacted to prevent the "false federalism" that results from exposing defendants to liability for conduct in multiple states when only one state's laws prohibit that conduct.  *See* S. Rep. 109-14, at 24–26.  Regardless, because Plaintiffs have put no other states' laws at issue, other states' laws cannot affect the "principal injuries" determination in this case.  *See Johnson*, 2013 WL 3448075, at *7 (finding

---

[5]  Indeed, the entire line of cases upon which Plaintiffs base their contention that allegations of multi-state conduct alone will suffice to defeat the "principal injuries" prong has been discredited.  *See* Pls.' Br. at 12 & n.18 (citing *Villalpando v. Exel Direct Inc.*, No. C–12–04137, 2012 WL 5464620, at *12 (N.D. Cal. Nov. 8, 2012); *Waller v. Hewlett–Packard Co.*, No. 11CV0454–LAB (RBB), 2011 WL 8601207, at *4 (S.D. Cal. May 10, 2011); *College of Dental Surgeons of P.R. v. Triple S Mgmt., Inc.*, No. 09–1209(JAF), 2011 WL 414991, at *5 (D. Puerto Rico Feb. 8, 2011); *Kearns v. Ford Motor Co.*, No. CV 05–5644GAF (JTLX), 2005 WL 3967998, at *12 (C.D. Cal. Nov. 18, 2005)).  In *Johnson v. MFA Petroleum Co.*, the defendants attempted to cite the same cases for the same proposition.  *See* No. 11-0981-CV-W-DGK, 2013 WL 3448075, at *7 (W.D. Mo. July 9, 2013).  But the court, citing *Kaufman*, explained: "[T]his argument was explicitly rejected by the only circuit court to directly address the issue. . . . The Court adopts *Kaufman*'s reasoning here because it is well-reasoned and conforms to the language of the statute."  *Id.*

"principal injuries" prong satisfied, reasoning: "Whether Defendants' related [conduct] in other states violates those states' respective laws is not an issue in this case and does not affect whether Plaintiff has met the 'principal injuries' requirement of the local controversy exception.").[6]

In sum, the "principal injuries" resulting from the alleged conduct of a *New York* defendant that allegedly violated *New York* consumer-protection laws and allegedly harmed *New York* residential energy customers[7] were incurred in *New York* in satisfaction of 28 U.S.C. § 1332(d)(4)(A)(i)(III).  Plaintiffs' misreading of the statute demonstrates nothing to the contrary.

> **5.      Because *New York* Plaintiffs are suing a *New York* Defendant for alleged violations of *New York* consumer-protection laws, the local controversy exception applies.**

As Defendants explained in detail in their motions to dismiss, this case presents the quintessential local controversy: *New York* Plaintiffs seek significant relief from a *New York* Defendant whose alleged conduct forms a significant basis of alleged violations of *New York* consumer-protection laws that caused alleged injuries in *New York*.  *See* Defs.' Br. at 8–15.  Plaintiffs' brief makes this very point.  Plaintiffs argue that Defendants' policies violate "*New York* . . . statute[s]," delay savings to "*New York's* energy consumers," and result from the "deregulation of *New York's* energy markets."  Pls.' Br. at 2 (emphases added).  Plaintiffs attempt to distract from the core New-York nature of their suit by suggesting that this suit has

---

[6] Plaintiffs misunderstand *Mattera v. Clear Channel Communications*, insisting that the case does not "stand for the proposition that non-New York residents must be able to challenge Ambit's New York policies" to defeat the "significant injuries" prong.  *See* 239 F.R.D. 70, 80 (S.D.N.Y. 2006); Pls.' Br. at 13 n.20.  *Mattera's* lone reference to standing was meant only to illustrate the absurdity of allowing allegations that complained-of conduct occurred nationwide to dictate the "principal injuries" analysis.  *See Mattera*, 239 F.R.D. at 80.

[7] Plaintiffs' reference to the residency records that Defendants appended to their brief is puzzling.  *See* Dkt. No. 59-9; Pls.' Br. at 13 n.20.  The residency records demonstrate satisfaction of the plaintiff-citizenship prong, which Plaintiffs do not challenge.  *See* 28 U.S.C. § 1332(d)(4)(A)(i)(I).  Plaintiffs appear to bootstrap this statistic to their misunderstanding of *Mattera* to somehow undercut the "significant injuries" prong.  Regardless of their intent, Plaintiffs' concession that only 2,800 out of over 900,000 customers—less than one percent—"are non-New Yorkers," proves the overwhelmingly New-York nature of this controversy.

national impact because it includes New York Plaintiffs and Texas Defendants.  But this illogical interpretation would prevent application of the local controversy exception any time CAFA's minimum diversity requirements were satisfied, which would lead to the absurd, and impermissible, result of reading the exception out of the statute.  *See United States v. Dauray*, 215 F.3d 257, 264 (2d Cir. 2000) ("A statute should be interpreted in a way that avoids absurd results.").

Because Defendants proved the mandatory applicability of CAFA's local controversy exception in their motions to dismiss, and because Plaintiffs' latest evasive theories fail, Defendants request that the Court decline to exercise jurisdiction over this case.  *See* 28 U.S.C. § 1332(d)(4)(A).

## B.   The Complaint fails to allege that personal jurisdiction exists over the Individual Defendants.

### 1.   Plaintiffs mistakenly contend that Defendants rely on the fiduciary shield doctrine.

New York does not apply the fiduciary shield doctrine, *see Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 468 (1988), and Defendants do not purport to rely upon it.  The fact that an individual is not *automatically shielded* from personal jurisdiction, does not make that individual *automatically subject* to personal jurisdiction.  The Individual Defendants may be subject to personal jurisdiction *only if* Plaintiffs have shown that either (1) their own contacts with New York satisfy the long-arm statute's requirements, or (2) jurisdiction should be imputed to them under an agency theory.  *See Hypoxico, Inc. v. Colo. Altitude Training LLC*, No. 02-Civ.-6191 (JGK), 2003 WL 21649437, at *3 (S.D.N.Y. July 14, 2003).  The Complaint alleges neither; thus, exercise of personal jurisdiction over the Individual Defendants is improper.

2.     **The Complaint alleges no facts demonstrating that the Individual Defendants' own contacts should subject them to personal jurisdiction.**

The allegations regarding the Individual Defendants' own contacts with New York are insufficient to exercise personal jurisdiction.  The Complaint alleged "no business conducted by [the Individual Defendants] *as . . . individual[s]* that might subject [them] to personal jurisdiction in New York."  *See Tradition Chile Agentes de Valores Ltda. v. ICAP Sec. USA, LLC*, No. 09-Civ.-10343(WHP), 2010 WL 4739938, at *5 (S.D.N.Y. Nov. 5, 2010).  Travel and advertising do not suffice. *See id.* (travel); *Virgin Enters. Ltd. v. Virgin Eyes LAC*, No. 08-CV-8564(LAP), 2009 WL 3241529, at *4 (S.D.N.Y. Sept. 30, 2009) (advertising).  A plaintiff makes the requisite showing only through allegations that defendants are *intimately involved* with the *specific* complained-of transaction.  For example, in *Kinetic Instruments, Inc. v. Lares*, plaintiffs brought a patent infringement suit against a corporation's president.  *See* 802 F. Supp. 976, 981 (S.D.N.Y. 1992).  Although the complaint alleged that the president attended trade shows in New York and sold infringing products in New York through the corporation, the court still found those allegations insufficient to confer personal jurisdiction based on the president's own contacts.  *Id.* at 982.  The court explained that the complaint failed to allege that the president "*personally sold the accused product*, and [made] no allegation of any other *personal transaction of business* by [the president] regarding the product."  *Id.* (emphases added).  Thus, in the case before the Court, to subject the Individual Defendants to personal jurisdiction based on their own contacts would require allegations that Chambless and Thompson participated in each individual energy sale to each individual customer.  Said another way, they would have to be at the kitchen table selling Ambit products to a specific customer.   But the Complaint fails to allege participation at the transaction level.

Plaintiffs try to remedy this failure by relying on allegations not contained in their Complaint. *Compare* Compl. ¶ 52 (stating merely that the 1% Savings Guarantee was *co-signed* by both Individual Defendants and that one Independent Consultant joined Ambit after dining with Thompson), *with* Pls' Br. at 4 (asserting that the Individual Defendants "*issu[ed]* the 1% Savings Guarantee" and "*personally direct[ed]*" the activities of their Sales Consultants) (emphases added). But Plaintiffs may not amend their Complaint in this manner. *See O'Brien*, 719 F. Supp. at 229. As a result, the Complaint fails to allege that personal jurisdiction arises from the Individual Defendants' own contacts.

### 3. The Complaint does not allege that the Individual Defendants acted as the agents of the LLCs in the transactions at issue.

Plaintiffs affirmatively argue that the agency theory of jurisdiction *does not* apply. The agency theory is properly invoked only if the Individual Defendants used the LLCs as their agents. *See Hypoxico,* , at *3. The requisite showing requires Plaintiffs to demonstrate that an officer is a "primary actor" of the corporation, *i.e.*, that he has "*knowledge of* and *consent to* the transaction carried out by the agent-corporation and that [he has] exercised control over the corporation in *the* transaction." *See id.* (emphases added). The agency theory is *not* properly invoked in the opposite scenario, *i.e.*, if the allegations show that "whatever activities [the Individual Defendants] may have personally taken were to further [the LLCs] business." *See Ontel Prods., Inc. v. Project Strategies Corp.*, 899 F. Supp. 1144, 1148 (S.D.N.Y. 1995). Here, the allegations in the Complaint suggest only that any activities the Individual Defendants may have taken were to further Ambit's business. *See id.* Plaintiffs agree, insisting that "the Individual Defendants themselves are purposefully transacting 'Ambit's business.'" Pls.' Br. at 4. This argument is the very opposite of what Plaintiffs must allege to demonstrate that personal jurisdiction exists via agency.

Plaintiffs' authority bolsters the conclusion that the agency theory does not apply.  *See* Pls.' Br. at 5 n.6.  For example, in a trademark case Plaintiffs cite, the court found that the agency theory conferred personal jurisdiction over an individual defendant where the individual defendant orally licensed the trademark to the corporation, directed the corporation's distribution of the mark, and then granted plaintiffs limited rights to sell goods bearing his mark.  *See Rainbow Apparel Distrib. Ctr. Corp. v. Gaze U.S.A., Inc.*, 295 F.R.D. 18, 26-27 (E.D.N.Y. 2013).  This showing of knowledge of, consent to, and control over the *specific* harm-causing activity was dispositive.  *Id.* at 27.  The court explained that ordinary acts of running a company could not alone be "sufficient to impute jurisdiction under agency theory, [because] then corporate executives . . . would be subject to long-arm jurisdiction in New York so long as the corporation transacted business [t]here."  *Id.*  Here, the Complaint lacks the requisite allegations of knowledge of, consent to, and control over the complained-of activity.[8]  Accordingly, personal jurisdiction also does not exist over the Individual Defendants under an agency theory.  Thus, the Individual Defendants are not subject to personal jurisdiction in this Court.

**C.     Plaintiffs fail to state claims upon which relief may be granted.**

**1.     Plaintiffs ignore the dispositive fact that the contracts at issue were month-to-month.**

As Defendants pointed out in their brief, the New York Terms of Service was a month-to-month contract which Ambit was allowed to amend.  *See* Defs.' Br. at 23–24.  In their brief, as in their Complaint, Plaintiffs simply ignore the contract term.   Ambit was not obligated, as

---

[8] The allegation that "all of the corporate defendants in this Complaint are controlled and operated by the Individual Defendant co-founders," *see* Compl. at 2 n.1, is nothing more than a "broadly worded and vague allegation" that fails to "sufficiently detail the [Individual Defendants'] conduct so as to persuade [this] [C]ourt that [they were] . . . 'primary actor[s]' in the specific matter in question."  *See Karabu Corp. v. Gitner*, 16 F. Supp. 2d 319, 324 (S.D.N.Y. 1998).

Plaintiffs suggest, to  provide service for a twelve-month period and remained free to amend its terms.  As a result, Plaintiffs cannot state a plausible claim.

>    **2.    Plaintiffs have not stated claims for relief under N.Y.G.B.L. § 349-d(7) or for unjust enrichment.**

As Defendants explained in their brief, the New York Terms of Service identify the variable charges therein.  *See* Defs.' Br. at 29 ("The New York GSP is clearly set aside and described to be set at 'a competitive variable market rate.'").  Further, Defendants explained that Plaintiffs' unjust enrichment claim fails.  *See* Defs.' Br. at 29.

Plaintiffs cite the oral transcript of a hearing on a motion to dismiss, purportedly in opposition to Defendants' 12(b)(6) motion to dismiss.  *See* Pls.' Br. at 30 n.45, 33 n.46 (citing *Wise v. Energy Plus Holdings*, No. 11-Civ.-7345 (S.D.N.Y. Mar. 29, 2012) (attached as Exh. 14 to Declaration of Steven L. Wittels ("Wittels Dec."), Dkt. No. 64)).  But in that oral hearing, the judge *granted* the defendant's motion to dismiss with regard to N.Y.G.B.L. § 349-d(7) because

>    The statute requires that variable charges be 'identified,' not that they be 'explained,' or that their 'basis' be identified. . . . Further, there is little in the legislative history of the statute or in the Public Service Commission's regulations . . . to clearly suggest that Section 349-d(7) is meant to address the content of an energy supply company's identification of its variable charges rather than the plain fact that they are variable.

*Wise*, Tr. at 17.  Further, the *Wise* court, quoting the Second Circuit, *granted* the defendant's motion to dismiss the plaintiffs' unjust enrichment claim because the consumer-protection statutes provided an adequate remedy at law.  *See Wise*, Tr. at 18.  Thus, Plaintiffs' additional authority further proves their inability to state two of their claims for relief.

**D.    CAFA policy disfavors jurisdictional discovery.**

Plaintiffs request discovery with regard to CAFA and personal jurisdiction in accordance with the Court's December 4, 2013 hearing.  In that hearing, the Court permitted Plaintiffs to

rely upon Federal Rule of Civil Procedure 56(d) as an analog for requesting jurisdictional discovery. The Rule requires a movant to show "specified reasons" for its request, identify probable facts not available, and detail what steps have been taken to obtain these facts. *See* FED. R. CIV. P. 56(d); *Heckworth v. Progressive Cas. Ins.*, 468 F.3d 722, 732–33 (10th Cir. 2004). Here, Plaintiffs' affidavit does not make specified reasons for its request, identify probable facts not available, or detail what steps Plaintiffs have taken to obtain these facts. *See generally* Wittels Dec. Thus, the request fails Rule 56(d)'s requirements.

Further, because the subject-matter-jurisdiction determination is dispositive, the Court should address whether subject matter jurisdiction exists before turning to personal jurisdiction. In addition to Plaintiffs' procedural failure, law and policy counsel against granting CAFA jurisdictional discovery. Plaintiffs ask for CAFA discovery with regard to "(1) Ambit New York's conduct, (2) Ambit New York's financial information, and (3) the geographic scope and particulars of Defendants' Guaranteed Savings Plan practices." *See* Wittels Dec. at 3. For the reasons set forth in this Reply, discovery on each of these issues is legally unwarranted. Moreover, the Senate Report "cautions that these jurisdictional determinations [under CAFA] should be made largely on the basis of readily available information." S. Rep. 109-14, at 44. Because "readily available information" demonstrates that the local controversy exception mandates that this Court decline jurisdiction, jurisdictional discovery is not appropriate.

## III. CONCLUSION

Plaintiffs' ever-evolving theories on how to evade the local controversy exception do not change the fundamental nature of this case. *New York* Plaintiffs have sued a *New York* Defendant for alleged violations of *New York* consumer-protection laws. As a result, this local controversy cannot be maintained in federal court. Accordingly, Defendants respectfully request that the Court dismiss Plaintiffs' Complaint.

Dated: New York, New York                 THOMPSON & KNIGHT LLP
      February 21, 2014

                            By: */s/ Michael W. Stockham*

                          Gabrielle Farina
                          New York Bar No. 4363412
                          Gabrielle.Farina@tklaw.com
                          900 3rd Avenue, 20th Floor
                          New York, New York 10022
                          Tel.: (212) 751-3001
                          Fax: (212) 751-3113

                          Stephen C. Rasch
                          Texas Bar No. 16551420, *pro hac vice*
                          Stephen.Rasch@tklaw.com
                          Michael W. Stockham
                          Texas Bar No. 24038074, *pro hac vice*
                          Michael.Stockham@tklaw.com
                          1722 Routh Street, Suite 1500
                          Dallas, Texas 75201-2533
                          Telephone: (214) 969-1700
                          Facsimile: (214) 969-1751

                          ATTORNEYS FOR DEFENDANTS AMBIT ENERGY
                          HOLDINGS, LLC, AMBIT TEXAS, LLC, AMBIT
                          MARKETING, LLC, AMBIT NEW YORK, LLC, JERE
                          W. THOMPSON, AND CHRIS CHAMBLESS.

### CERTIFICATE OF SERVICE

       I certify that a true and correct copy of the foregoing document has been served on all counsel of record in accordance with the Federal Rules of Civil Procedure by ECF on this 21st day of February, 2014.

                                */s/ Michael W. Stockham*
                                Michael W. Stockham

518218 000007 9105744.1