UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
:
TAURSHIA SIMMONS et al.,                                          :
:
                Plaintiffs,                                :
:     13-CV-6240 (JMF)
        -v-                                                                 :
:     OPINION AND ORDER
AMBIT ENERGY HOLDINGS, LLC et al.,                     :
:
                Defendants.                              :
:
------------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 09/30/2014

JESSE M. FURMAN, United States District Judge:

      Plaintiffs Taurshia Simmons and Navid Kalatizadeh bring this putative class action against Defendants Jere W. Thompson and Chris Chambless (together, the "Individual Defendants"), as well as Ambit Energy Holdings, LLC; Ambit Texas, LLC; Ambit Marketing, LLC; and Ambit New York LLC (collectively, "Ambit" or the "Company" and, together with Individual Defendants, "Defendants") to recover damages for alleged violations of New York consumer protection laws and for unjust enrichment. (Second Am. Compl. (Docket No. 38) ("SAC") ¶¶ 93-130). Although Plaintiffs invoke the Court's jurisdiction pursuant to the Class Action Fairness Act ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005), *codified in part at* 28 U.S.C. § 1332(d), Defendants move to dismiss for lack of subject-matter jurisdiction, arguing that a mandatory exception to CAFA jurisdiction, known as the "local controversy exception," *see* 28 U.S.C. § 1332(d)(4)(A), applies. The question is a close one, but for the reasons stated below the Court agrees that the local controversy exception mandates dismissal. Accordingly, Defendants' motion is granted, and the Second Amended Complaint is dismissed in its entirety.

**BACKGROUND**

In 2006, the Individual Defendants founded Ambit, a Texas-based independent energy supplier that serves more than one million electric and natural gas customers across twelve different states. (SAC ¶¶ 2, 17-21, 63). Generally known as "Ambit" or "Ambit Energy," the Company operates through Ambit Energy Holdings, LLC, a Texas limited liability company ("LLC") headquartered in downtown Dallas, and various related entities. (SAC ¶¶ 21-22). To the extent relevant here, all but one of those entities is either an LLC or a limited partnership organized under the laws of Texas. (SAC ¶¶ 23-29). The sole, but important, exception is Defendant Ambit New York LLC ("Ambit New York"), which — although also headquartered in Dallas, "wholly owned" by Ambit Energy Holdings, LLC, and "wholly controlled and directed" by the Individual Defendants — is a New York LLC. (SAC ¶¶ 28-29).

Plaintiffs, citizens and residents of New York, formerly contracted with Ambit New York to purchase electricity for residential use in New York. (SAC ¶¶ 15-16, 28, 38).[1] Plaintiffs were allegedly enrolled in Ambit's New York Guaranteed Savings Plan, under which "Ambit promises that its customers' 12-month energy costs will be at least 1% less than what the customers' existing utility (the 'incumbent provider') would have charged, or Ambit will make up the difference." (SAC ¶¶ 3, 65). Plaintiffs allege, however, that Ambit "overstates the amount customers' incumbent providers would have charged during the year," thus profiting from the shortfall and leaving customers "in the dark as to the true savings Ambit owes them." (SAC ¶¶ 66-67; *see also id.* ¶¶ 4, 70-71). Further, Plaintiffs complain that Ambit does not

---

[1]   Strictly speaking, Plaintiff Simmons originally contracted with Ambit Energy L.P., a Texas limited partnership. (SAC ¶ 38). "At some point in 2010," however, Ambit New York "was substituted as the contracting party in place of Ambit Energy L.P. in Ambit's Terms of Service." (SAC ¶ 28 (emphasis omitted)).

disclose that customers have to wait a year or more before receiving refund checks, without interest, thus depriving customers of "the use of [their] refund money."  (SAC ¶¶ 5, 68-69).

Beginning in 2011, Ambit implemented a new policy — which Plaintiffs call the "automatic default policy" — that "eliminated the supposed benefits" of the New York Guaranteed Savings Plan.  (SAC ¶¶ 6-7, 72-73).  Under the automatic default policy, Ambit created "a more expensive plan called the New York Select Variable Plan and began automatically shifting customers signed up for the Guaranteed Savings Plan into the New York Select Variable Plan."  (SAC ¶ 6).  More specifically, on or about January 31, 2012, Ambit amended the Ambit New York customer service agreement (the "Terms of Service") to require customers to renew their enrollment in the New York Guaranteed Savings Plan every year or otherwise be automatically enrolled in the New York Select Variable Plan.  (SAC ¶¶ 8-9, 72-74).  (Plaintiffs allege that, in fact, Ambit began implementing the automatic default policy even before it had amended its terms of service.  (SAC ¶ 75).)  Plaintiffs claim that when the New York Select Variable Plan was added to the Terms of Service, the reference constituted a single line and did not "identify a single variable charge."  (SAC ¶ 79).

On September 5, 2013, Plaintiffs filed this case (Docket No. 1), and, on December 26, 2013, they filed the operative Second Amended Complaint (Docket No. 38).  The Second Amended Complaint alleges that Plaintiffs and a class of similarly situated individuals — all of whom purchased energy services from Ambit after September 5, 2007, and were either enrolled in the New York Guaranteed Savings Plan or automatically enrolled in the New York Select Variable Plan (SAC ¶ 84) — suffered damages as a result of Ambit's policies.  More specifically, the Second Amended Complaint states five claims — three under the Energy Services Company Consumers Bill of Rights, N.Y. G.B.L. § 349-d, a relatively recent New York

consumer-protection law targeting abuses in the energy services market; one under New York's general consumer fraud statute, N.Y. G.B.L. § 349; and one under New York common law. In particular, Plaintiffs allege: (1) violations of Section 349-d(6)'s requirement that all material changes in contracts for residential energy services be expressly consented to by consumers (Count One); (2) violations of Section 349-d(7)'s requirement that all variable charges in contracts and marketing for residential energy be clearly and conspicuously delineated (Count Two); (3) violations of Section 349-d(3)'s prohibition of deceptive acts in the marketing of residential energy services (Count Three); (4) violations of Section 349's general prohibition of deceptive business conduct (Count Four); and (5) unjust enrichment (Count Five). They seek injunctive relief and damages. (SAC ¶¶ 100-01, 108-09, 116-17, 124-25, 130).

## DISCUSSION

It is axiomatic that "federal courts are courts of limited jurisdiction and, as such, lack the power to disregard such limits as have been imposed by the Constitution or Congress." *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 213 (2d Cir. 2013) (internal quotation marks omitted). Here, as noted, Plaintiffs contend that jurisdiction is proper pursuant to CAFA, 28 U.S.C. § 1332(d), "which confer[s] federal jurisdiction over any class action involving: (1) 100 or more class members, (2) an aggregate amount in controversy of at least $5,000,000, exclusive of interest and costs, and (3) minimal diversity, *i.e.*, where at least one plaintiff and one defendant are citizens of different states." *Cutrone v. Mortgage Elec. Registration Sys., Inc.*, 749 F.3d 137, 142 (2d Cir. 2014) (internal quotation marks omitted). Although it is undisputed that those standards are met in this case (*see* SAC ¶¶ 42-43; *see also* Defs.' Mem. Law Support Mots. To Dismiss (Docket No. 56) ("Defs.' Mem.") 6), Defendants nevertheless move to dismiss the

Second Amended Complaint, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, for lack of subject-matter jurisdiction.  (Defs.' Mem. 6-20).

Defendants do so based on a statutory exception to CAFA jurisdiction, known as the local controversy exception, "for those cases consisting of primarily local, *intrastate* matters." *Coffey v. Freeport McMoran Copper & Gold*, 581 F.3d 1240, 1243 (10th Cir. 2009).  That exception provides that a district court "shall decline to exercise jurisdiction" under CAFA

> (i) over a class action in which —
>
>> (I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;
>>
>> (II) at least 1 defendant is a defendant —
>>
>>> (aa) from whom significant relief is sought by members of the plaintiff class;
>>>
>>> (bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and
>>>
>>> (cc) who is a citizen of the State in which the action was originally filed; and
>>
>> (III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and
>
> (ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons . . . .

28 U.S.C. § 1332(d)(4)(A).[2]  The overwhelming weight of authority holds that Defendants, as the parties who seek to invoke the exception, bear the burden of proving by a preponderance that

---

[2] As another court in this District has observed, "[d]isputes over CAFA in the federal courts have most often arisen in situations in which a plaintiff files a class action lawsuit in a state court, a defendant removes the case to federal court under CAFA, and the plaintiff moves to remand the case to state court."  *Hart v. Rick's N.Y. Cabaret Int'l, Inc.*, 967 F. Supp. 2d 955, 960 (S.D.N.Y. 2014) (citing *Blockbuster, Inc. v. Galeno*, 472 F.3d 53 (2d Cir. 2006)).  Although

the exception applies.  *See, e.g.*, *Kaufman v. Allstate N.J. Ins. Co.*, 561 F.3d 144, 153 (3d Cir. 2009) (noting that the courts of appeals to consider the question "have uniformly concluded that once CAFA jurisdiction has been established, the burden shifts to the party objecting to federal jurisdiction to show that the local controversy exception should apply"); *see also, e.g.*, *Hart*, 967 F. Supp. 2d at 960; *Mattera v. Clear Channel Commc'ns*, 239 F.R.D. 70, 79 (S.D.N.Y. 2006).

      The Court concludes that Defendants have carried their burden here.  As an initial matter, there is no dispute that two of the four requirements for the exception are met.  Defendants have shown that at least two-thirds of the class members are — or at least very likely are — citizens of New York.  (Defs.' Mem. 8-9; *see also* Pls.' Mem. Law Opp'n Defs.' Mots. To Dismiss (Docket No. 63) ("Pls.' Mem.") 8).  *See, e.g.*, *Fields v. Sony Corp. of Am.*, No. 13-CV-6520 (GBD), 2014 WL 3877431, at *3 (S.D.N.Y. Aug. 4, 2014) (stating that the party seeking to invoke the local controversy exception may "make reasonable assumptions about the makeup of the putative class to demonstrate that two-thirds or more of the class is domiciled in New York" (internal quotation marks omitted)); *Mattera*, 239 F.R.D. at 80 (applying the exception upon a finding that it was "reasonably likely that more than two-thirds of the putative class members of the proposed class — all of whom work in New York — are citizens of New York").  And Defendants represent that no other class action has been filed asserting the same or similar factual allegations against any Defendant on behalf of the same or other persons.  (Def.'s Mem. 15 n.11; *see also* Pls.' Mem. 8).  Thus, as the parties agree, whether the "local controversy exception" applies turns

---

"[t]his case is atypical in that plaintiffs, not defendants, seek to assert federal jurisdiction," *id.*, that has no bearing on the construction or application of CAFA to the dispute.

solely on whether the remaining two requirements — namely, the "principal injuries" and "significant defendant" requirements — are met.[3]

The Court turns first to the "principal injuries" provision. Significantly, as the Third Circuit has held, that provision "invokes 'the alleged conduct or any related conduct' in the disjunctive. As such, it is satisfied *either* (1) when principal injuries resulting from the alleged conduct of each defendant were incurred in the state in which the action was originally filed, '*or*' (2) when principal injuries resulting from any related conduct of each defendant were incurred in that state." *Kaufman*, 561 F.3d at 158 (emphasis added); *accord Johnson v. MFA Petroleum Co.*, No. 11-0981-CV-W-DGK, 2013 WL 3448075, at *7 (W.D. Mo. July 9, 2013). Here, Plaintiffs' Second Amended Complaint seeks relief, under *New York* law, for Ambit New York customers who were enrolled in and allegedly deceived by the purported savings of the *New York* Guaranteed Savings Plans and the *New York* Select Variable Plan. (SAC ¶¶ 5-6). By definition, every one of those customers received service *in* New York (and nearly every one presumably also lives in New York). It follows that the "principal injuries resulting from the alleged conduct . . . were incurred in" New York. 28 U.S.C. § 1332(d)(4)(A)(i)(III); *cf. Kaufman*, 561 F.3d at 158 (finding the requirement met where the plaintiffs were "all citizens of New Jersey, the insurance policies were issued in New Jersey, and the putative class would be comprised of members with insurance policies issued in New Jersey"); *Johnson*, 2013 WL 3448075, at *7

---

[3] In their memoranda of law, both sides rely heavily on a Senate Committee Report with respect to CAFA. (Pls.' Mem. 8 n. 11, 9 n.12, 10, 14; Defs.' Mem. 7). Putting aside the fact that the Report does not cut clearly in either side's favor, the Second Circuit has noted "the Senate report was issued ten days *after* the enactment of the CAFA statute, which suggests that its probative value for divining legislative intent is minimal." *Blockbuster*, 472 F.3d at 58 (emphasis added); *see also College of Dental Surgeons of P.R. v. Triple S Mgmt., Inc.*, Civil No. 09-1209 (JAF), 2011 WL 414991, at *4 (D.P.R. Feb. 8, 2011). Accordingly, the Court declines to rely on the Report in the analysis that follows.

(finding the requirement met because "[t]he alleged wrongful conduct . . . occurred only in Missouri under the Missouri Merchandising Practices Act, involved only Missouri citizens, and any damages resulting from this conduct occurred only in Missouri").

In arguing otherwise, Plaintiffs rely on cases holding that the local controversy exception "'does not apply to cases in which defendants engaged in conduct that could be alleged to have injured persons throughout the country or broadly throughout several states.'" (Pls.' Mem. 10 (quoting *Mattera*, 239 F.R.D. at 80); *see id.* at 10-13 & nn.13, 18 (discussing and citing other cases); *see also* Letter from Steven L. Wittels, Sept. 30, 2014 (Docket No. 70) (citing similar "supplemental" authority)). As the Third Circuit has explained, however, those holdings are hard to square with the plain language of CAFA, which uses the "disjunctive 'or'" rather than the "conjunctive 'and.'" *Kaufman*, 561 F.3d at 158; *see also Johnson*, 2013 WL 3448075, at *7 (declining to rely on the same authority in light of *Kaufman*). In any event, even if the Court were inclined to follow those cases here, it would not change the result, as Plaintiffs' Second Amended Complaint does not allege facts from which the Court could conclude that Defendants have caused injury to anyone outside of New York. The Second Amended Complaint does allege that Defendants have engaged in similar (if not identical) conduct in Illinois. (SAC ¶¶ 39-40; *see* Pls.' Mem. 10-11). But any harm caused by Defendants in Illinois is a product of separate agreements specific to Illinois. (SAC ¶¶ 39-40). Moreover, the Second Amended Complaint includes no allegations whatsoever of how (or even whether) Defendants' conduct violates Illinois — let alone New York — law. That is, conclusory assertions of "harm[]" to

8

consumers "throughout the country" aside (*see* SAC ¶ 41), the Second Amended Complaint does not allege *cognizable* (i.e., legal) injury to anyone outside of New York.[4]

Whether the final requirement — the "significant defendant" requirement — is met here is a closer question. To satisfy that requirement, Defendants must show that at least one of them is (1) a citizen of New York, (2) "from whom significant relief is sought by members of the plaintiff class," and (3) "whose alleged conduct forms a significant basis for the claims asserted." 28 U.S.C. § 1332(d)(4)(A)(i)(II). Although CAFA itself "does not define or supply standards for determining whether the relief sought is 'significant,' or for determining which bases for the plaintiffs' claims are 'significant,'" most courts have "required that the local defendant's conduct must be significant in relation to the conduct alleged against other defendants in the complaint, and that 'the relief sought against that defendant is a significant portion of the entire relief sought by the class.'" *Ava Acupuncture P.C. v. State Farm Mut. Auto. Ins. Co.*, 592 F. Supp. 2d 522, 528 (S.D.N.Y. 2008) (quoting *Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1167 (11th Cir. 2006)); *see also, e.g.*, *Kaufman*, 561 F.3d at 155-57 (discussing the "significant basis" prong). But while the test involves comparison of the local defendant to the other defendants, it does not require a showing of *predominance* — that is, that the relief sought from the local defendant is *more* significant than the relief sought from the other defendants or that the local defendant's conduct forms a *more* significant basis for the claims asserted than the conduct of the other defendants. It requires only that the relief sought and the local defendant's conduct forming a

---

[4] For the same reasons, even if the Court could consider them in the "principal injury" inquiry, Plaintiffs' passing references in their memorandum of law to Defendants' conduct in Delaware, Maryland, New Jersey, Pennsylvania, and Washington, D.C. do not affect the Court's analysis or conclusion. (Pls.' Mem. 11-12).

basis for the claims are "significant," which is "defined as 'important, notable.'" *Kaufman*, 561 F.3d at 157 (quoting *Oxford English Dictionary* (2d ed. 1989)).

The Court concludes that Ambit New York fits the bill. First, there is no dispute that Ambit New York is a citizen of New York within the meaning of CAFA. (SAC ¶ 28; *see* Defs.' Mem. 9-10; *see also* Pls.' Mem. 8). Second, Plaintiffs plainly seek "significant relief" from Ambit New York, whether Plaintiffs seek such relief only with respect to Counts One and Two (as they argue) or with respect to all five Counts (as Defendants contend). (*Compare* Pls.' Mem. 18, 21, *with* Defs.' Mem. 12). In Counts One and Two, Plaintiffs seek not only injunctive relief, but also treble damages — defined as three times actual damages or $500, whichever is greater — not to exceed $10,000, *see* N.Y. G.B.L. § 349-d(10), on behalf of a class comprised of "hundreds of thousands of individuals." (SAC ¶¶ 86, 99-101, 108-09). Thus, Plaintiffs seek both injunctive relief and damages totaling up to $100 million, if not more. Moreover, Plaintiffs seek that relief "equally" from Ambit New York and the other Defendants. *Coleman v. Estes Express Lines, Inc.*, 631 F.3d 1010, 1020 (9th Cir. 2011). And "[t]here is nothing in the complaint to suggest either that the injunctive relief sought is itself insignificant, or that [Ambit New York] would be incapable of complying with an injunction," and "nothing . . . to suggest that [Ambit New York] is a nominal defendant." *Id.* However the word "significant" is defined and even if viewed in relation to the additional relief that Plaintiffs seek from the other Defendants under Counts Three through Five, that relief plainly qualifies for purposes of the CAFA exception. *Cf. Kaufman*, 561 F.3d at 155 (noting that the "significant basis" provision "does not require that the local defendant's alleged conduct form a basis of *each* claim asserted; it requires the alleged conduct to form a *significant basis* of all the claims asserted").

Plaintiffs' speculation that Ambit New York may have "no assets to satisfy any judgment" is ultimately irrelevant to the jurisdictional analysis. (Pls.' Mem. 21; *see also id.* at 2, 13, 18 n.24, 19). Although a couple courts have considered a local defendant's ability to satisfy a potential judgment (or lack thereof) in the significance analysis, *see, e.g.*, *Casey v. Int'l Paper Co.*, No. 07-CV-421 (RV) (MD), 2008 WL 8854569, at *5 (N.D. Fla. Jan. 7. 2008); *Robinson v. Cheetah Transport.*, No. 06-0005 (KLH), 2006 WL 468820, at *3 (W.D. La. Feb. 27, 2006), the majority of courts to consider the issue explicitly has — correctly — rejected that approach as inconsistent with the plain language of the local controversy exception. *See, e.g.*, *Coleman*, 631 F.3d at 1015-16; *Coffey*, 581 F.3d at 1245; *see also Kaufman*, 561 F.3d at 157 (directing the district court on remand to "focus" on allegations in the complaint, not extrinsic evidence). As the Tenth Circuit explained in *Coffey*, the leading case on point, "[t]he statutory language is unambiguous, and a 'defendant from whom significant relief is sought' does not mean a 'defendant from whom significant relief may be obtained.' There is nothing in the language of the statute that indicates Congress intended district courts to wade into the factual swamp of assessing the financial viability of a defendant . . . ." 581 F.3d at 1245.[5]

Finally, Ambit New York's "alleged conduct forms a significant basis for the claims asserted." 28 U.S.C. § 1332(d)(4)(A)(i)(II). It may well be, as Plaintiffs argue, that the other Defendants formulated and implemented the programs and plans at issue. (Pls.' Mem. 14-16). It may also be that the other Defendants effectively controlled Ambit New York and, thus, can ultimately be held vicariously liable for its actions. (Pls.' Mem. 22-24). But, as alleged in the

---

[5] More broadly, the majority of circuit courts (and every such court to analyze the issue explicitly) has held that the significance inquiry is limited to the four corners of the complaint. *See Johnson*, 2013 WL 3448075, at *4 & n.2 (citing cases). In this case, the Second Amended Complaint is silent with respect to Ambit New York's ability to satisfy any judgment.

11

Second Amended Complaint, Ambit New York was or is *the* counter-party to the contracts that form the basis of the claims in this case (namely, the Terms of Service) — and thus, *the* party through whom potential class members engaged with Defendants. (SAC ¶ 28).[6] Put simply, therefore, without Ambit New York, there would be *no* basis for many, if not all, of the claims in this case. It follows that Ambit New York's alleged conduct forms "a *significant* basis" — however the term "significant" is understood — "for the claims asserted." 28 U.S.C. § 1332(d)(4)(A)(i)(II) (emphasis added). And any contention that because the other Defendants control "all important actions" of Ambit New York, the conduct of Ambit New York "does not 'form a significant basis for the claims' asserted . . . ignores the fact that the conduct of [Ambit New York], even if controlled by [the other Defendants], nonetheless remains the conduct of [Ambit New York], for which [it] may be held liable." *Coleman*, 631 F.3d at 1020.

In sum, although the question is a close one, the Court concludes that dismissal is mandated by the local controversy exception, which is "designed to draw a delicate balance between making a federal forum available to genuinely national litigation and allowing the state courts to retain cases when the controversy is strongly linked to that state." *Hart v. FedEx*

---

[6] As noted above, *see supra* note 1, although the Second Amended Complaint alleges (on information and belief) that Ambit New York "was not a party to the Terms of Service applicable to" Simmons and class members who "switched to Ambit" before Ambit New York "was substituted into the Terms of Service" (SAC ¶ 38), elsewhere it acknowledges that, "[a]t some point in 2010," Ambit New York "was substituted as the contracting party in . . . Ambit's Terms of Service." (SAC ¶ 28). As that substitution predated the effective date of the New York law upon which Plaintiffs rely (SAC ¶ 94), Plaintiffs cannot dispute that Ambit New York was (or is) *the* relevant counterparty for the Terms of Service. Perhaps recognizing that point, Plaintiffs argue in their memorandum of law that the Terms of Service are void under New York law. (Pls.' Mem. 2, 17 n.23, 18, 24 n.41, 35). But that contention is not made in the Second Amended Complaint itself, and ultimately implicates the merits of the case, which are beyond the purview of the current inquiry. *See, e.g..*, *Coleman*, 631 F.3d at 1017 ("We see nothing in CAFA that indicates a congressional intention to turn a jurisdictional determination concerning the local defendant's 'alleged conduct' into a mini-trial on the merits of the plaintiff's claims.").

*Ground Package Sys. Inc.*, 457 F.3d 675, 682 (7th Cir. 2006); *see also Brook v. UnitedHealth Grp. Inc.*, No. 06-CV-12954 (GBD), 2007 WL 2827808, at *3 (S.D.N.Y. Sept. 27, 2007) ("The exceptions are intended to keep purely local matters and issues of particular state concern in the state courts." (internal quotation marks and citation omitted)).  At bottom, despite Plaintiffs' efforts to cast this case in national terms, and despite the alleged involvement of Defendants from outside New York, this suit involves *New York* citizens suing a *New York* company for injuries caused in *New York* by alleged wrongdoing under *New York* law in *New York*.  In enacting the local controversy exception, Congress made clear that such a suit should not be litigated in federal court.  It is not for this Court to second guess Congress's judgment.[7]

## CONCLUSION

For the reasons stated above, the Court concludes that it lacks subject-matter jurisdiction over this case.  Accordingly, Defendants' motion to dismiss is GRANTED (without prejudice to

---

[7] In conjunction with their opposition to Defendants' motion (and in response to an invitation by the Court to do so (Docket No. 37)), Plaintiffs filed an attorney declaration seeking jurisdictional discovery in the event "[the Court] harbors any doubts" about jurisdiction under CAFA.  (Decl. Steven L. Wittels Supp. Req. Jurisdictional Disc. Opp. Defs.' Mot. To Dismiss Pls.' Second Am. Compl. ¶ 2 (Docket No. 64)).  In particular, Plaintiffs request "leave to conduct limited discovery to test Defendants' jurisdictional claims as to (1) Ambit New York's conduct, (2) Ambit New York's financial information, and (3) the geographic scope and particulars of Defendants' Guaranteed Savings Plan practices."  (*Id.* ¶ 4).  The Court declines to grant Plaintiffs' request, however, both because extrinsic evidence is irrelevant to the bulk of the necessary inquiry, *see, e.g.*, *Johnson*, 2013 WL 3448075, at *4 ("In determining whether the requirements that significant relief is sought and the alleged conduct forms a significant basis for the claims have been met under 28 U.S.C. § 1332(d)(4)(A)(i)(II)'s sections (aa) and (bb), the majority of circuits find that the district court should consider only the allegations in the plaintiff's complaint or petition for damages." (citing cases)), and because Plaintiffs fail to point to any specific facts or evidence essential to their opposition, *cf.* Fed. R. Civ. P. 56(d) (providing, with respect to summary judgment motions, that if the non-moving party "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition," the court may, among other things, " allow time . . . to take discovery").

Plaintiffs' refiling their suit in an appropriate state court), and the Court need not reach Defendants' alternative arguments for dismissal.

The Clerk of Court is directed to terminate Docket No. 55 and to close the case.

SO ORDERED.

Date: September 30, 2014
New York, New York

_____
JESSE M. FURMAN
United States District Judge